UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| craigslist, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Henry D. McMaster, *et al*. <br><br> Defendants. | Civil Action No. 2:09-cv-01308-CWH <br><br><br> **PLAINTIFF CRAIGSLIST, INC.'S REPLY TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING SUBJECT MATTER JURISDICTION** |

Plaintiff craigslist, Inc. ("craigslist") hereby respectfully replies to Defendants' Supplemental Memorandum Regarding Subject Matter Jurisdiction ("Defs.' Supp.").

1.     **This Court Has Subject Matter Jurisdiction.**  Defendants' argument regarding federal subject matter jurisdiction completely misses the relevant issues. As craigslist's supplemental brief established, there are two well-settled and independent reasons the Court has subject matter jurisdiction over craigslist's Section 230 claim: *First,* as the Supreme Court has repeatedly recognized in cases such as *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983), a suit to enjoin a state official's threatened enforcement of state law on the ground that such enforcement is preempted by a federal statute falls squarely within federal question jurisdiction under 28 U.S.C. § 1331. *See* Pl.'s Supp. 4-7. *Second,* federal question jurisdiction also exists because craigslist's Section 230 claim is asserted under 42 U.S.C. § 1983, which provides a federal cause of action for a state officer's threatened violations of rights secured by federal statute. *See* Pl.'s Supp. 7-10.

Defendants' supplemental brief fails to address, much less refute, the second basis for jurisdiction—craigslist's assertion of its Section 230 claim through § 1983.

As to the first basis, Defendant's only contention is that craigslist's assertion of its immunity under Section 230 is "defensive," rather than "offensive," for purposes of the well-pleaded complaint rule. Defendants ignore, however, that while a claim of federal preemption may be merely "defensive" in the context of a suit between only *private litigants*, such a claim is asserted "offensively" in an action to enjoin *state officials* from interfering with rights secured under a preemptive federal law. As the First Circuit has explained:

> A claim that a state regulation is preempted by a federal statute … need not always arise as a defense when injunctive relief is sought against state officials. A plaintiff may assert federal preemption as an affirmative cause of action to enjoin state officials from interfering with federal rights. In that context, a claim of preemption—though ultimately "defensive" in the sense that it seeks to prevent harms threatened by state officials—*does* constitute a federal question under § 1331.

*Local Union No. 12004, United Steelworkers of Am. v. Mass.*, 377 F.3d 64, 74 (1st Cir. 2004) (citation omitted). The reason that such a preemption claim against state officers is "offensive" for purposes of the well-pleaded complaint rule is that "the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws." *Burgio & Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1006 (2d Cir. 1997) (quoting 13B Wright, et al., Federal Practice & Procedure § 3566, at 102 (1984)); *see also, e.g.*, *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008) (recognizing this principle and distinguishing suits against private parties). The availability of such prospective relief against state officers "gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Not surprisingly, while Defendants cite three cases for the proposition that Section 230 immunity "arises only as a federal defense to a state action" (Defs.' Supp. 4), none of those cases concerned suits, such as this one, to enjoin state officers from enforcing state laws in a manner prohibited by Section 230. One of the cited cases did not involve Section 230 at all, *see Viz*

- 2 -

*Media LLC v. Steven M. Spector PC*, 2007 WL 1068203 (N.D. Cal. Apr. 10, 2007) (addressing the availability of removal under the Bankruptcy Code), and the other two were simply garden-variety applications of the well-pleaded complaint rule in litigation between only private parties, *see Cisneros v. Sanchez*, 403 F. Supp. 2d 588 (S.D. Tex. 2005) (Section 230 did not provide a basis for removal to federal court of a civil suit between private parties); *R.L. Lackner, Inc. v. Sanchez*, 2005 WL 3359356 (S.D. Tex. Dec. 9, 2005) (same).

      2.    **There Is a Case or Controversy.**  Defendants now argue that craigslist's suit does not present an Article III case-or-controversy because craigslist faces only the "mere 'threat' of prosecution." Defs.' Supp. 6. Remarkably, Defendants have also contended, in support of their request for abstention under the *Younger* doctrine, that "the criminal proceeding in this case [has] commenced." Defs.' Mem. Mot. to Dismiss 11. In other words, the Defendants have now argued *both* that state judicial proceedings against craigslist are already ongoing for purposes of *Younger* abstention, yet are only a distant possibility for purposes of Article III. Obviously, this cannot be so.

      As set forth in craigslist's supplemental brief, Defendant McMaster's repeated threats of prosecution—which specifically targeted craigslist and publicly branded craigslist's CEO as "Defendant Number 1"—are more than sufficient to give rise to an Article III controversy regarding whether Section 230 and the Constitution bar Defendants from enforcing South Carolina law against craigslist on the basis of content posted by third parties to its web site. *See* Pl.'s Supp. 10-13. At the same time, those threats, including Defendant McMaster's public announcement that his office had commenced an "investigation," fall well short of a "state judicial proceeding" that could support *Younger* abstention. *See* Pl.'s Mem. Mot. to Dismiss 11-15.

Defendants erroneously suggest that there is a heightened Article III standing requirement for federal statutory, as opposed to constitutional, claims. *See* Defs.' Supp. 5-6. They cite no authority for this notion, however, and there is none. *See Morales v. Trans World Airlines*, 504 U.S. 374, 381 (1992) (pre-enforcement review available where state attorneys general "made clear that they would seek to enforce" general state consumer protection laws in a manner that was preempted by federal law). If anything, the fact that Section 230 confers a federal immunity not just from liability, but also from the burdens of litigation, underscores that federal courts should be especially open to parties, such as craigslist, who seek to vindicate their rights under Section 230 to be free from state enforcement actions of the sort threatened here. As the Fourth Circuit recently stated:

> Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process. ... We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from ultimate liability, but also from having to fight costly and protracted legal battles.

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 254-255 (4th Cir. 2009) (internal quotation marks and citations omitted); *see also Zeran v. America Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997) (Section 230 intended to prevent the "chilling effect on the freedom of Internet speech" that would result from subjecting online intermediaries to liability for third-party content).

Finally, contrary to Defendants' assertion, there is nothing "hypothetical" (Defs.' Supp. 7) about what craigslist asks this Court to adjudicate. Defendants threaten to enforce South Carolina prostitution laws against craigslist on the basis of content appearing on craigslist's web site that originated with third parties. But Section 230 immunizes craigslist from precisely such liability, without regard to whether craigslist might be deemed to know of specific third-party content that is unlawful or in furtherance of unlawful activity. craigslist accordingly seeks to

- 4 -

have the Court declare (and issue a corresponding injunction) that enforcement of those laws against craigslist on the basis of third-party content is preempted by Section 230. None of the cases cited by Defendants remotely suggest that this Court lacks the power to adjudicate this dispute. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 n.7 (2007) (explaining, *inter alia*, that *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998), cited by Defendants, does not preclude litigation of a declaratory-judgment action that would "finally and conclusively resolve the underlying controversy").

## CONCLUSION

craigslist respectfully requests that the Court deny Defendants' motion to dismiss.

DATED this 17th day of March, 2010.

        Respectfully submitted,

        */s/ Joseph P. Griffith, Jr.*

        Joseph P. Griffith, Jr. (Fed. I.D. #2473)
        Joe Griffith Law Firm, LLC
        Seven State Street
        Charleston, SC 29401
        843.225.5563 (tel)
        843.722.6254 (fax)

        Eric D. Brandfonbrener
        Perkins Coie LLP
        131 South Dearborn Street, Suite 1700
        Chicago, IL 60603
        312.324.8400 (tel)
        312.324.9400 (fax)

        Patrick J. Carome
        Wilmer Cutler Pickering Hale and Dorr LLP
        1875 Pennsylvania Avenue, NW
        Washington, DC 20006
        202.663.6000 (tel)
        202.663.6363 (fax)

        *Attorneys for Plaintiff craigslist, Inc.*