**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| craigslist, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:09-CV-01308-CWH |
| v. | ) | |
| | ) | |
| HENRY D. McMASTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RULE 59(e) MOTION FOR**
**RECONSIDERATION OF THE COURT'S ORDER OF**
**DISMISSAL AND JUDGMENT, AND MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Plaintiff craigslist, Inc., respectfully seeks reconsideration and vacatur of this Court's August 6, 2010 Order (the "Order") (Docket No. 43), and corresponding vacatur of this Court's August 12, 2010 judgment (Docket No. 44), pursuant to Federal Rule of Civil Procedure 59(e) and the Court's inherent authority to correct errors of law in its rulings. Plaintiff respectfully submits that such reconsideration and vacatur are warranted because the Order, which dismissed Plaintiff's Complaint in its entirety based on the Court's *sua sponte* determination that there is no Article III case and controversy, conflicts with controlling U.S. Supreme Court and Fourth Circuit precedent in two important respects.

*First*, the Order erroneously holds (*see* Order at 18-19) that craigslist's standing to sue was negated, or alternatively that this case was mooted, by ambiguous and non-binding statements of Defendants' counsel, in the course of litigating the case, purporting to disavow the broad theory for prosecuting craigslist that their client, Defendant McMaster, had vociferously threatened both before and after craigslist filed suit. This holding cannot be reconciled with the clear and well-settled rule of law that a defendant ordinarily cannot moot a case that has properly been brought in federal court merely through statements of counsel purporting to disavow her client's intent to continue the course of conduct that prompted the suit.

*Second*, the Order also errs in concluding that craigslist lacks standing to challenge Defendants' threat to prosecute it under a so-called particularized theory of liability, *see* Order at 19-23, even though the Order specifically "finds that this theory presents a credible threat of prosecution to the Plaintiff," *id.* at 19. The premise of this holding is that craigslist has not alleged "that it has in the past allowed, or intends in the future to allow, a particular ad to be posted to its website despite knowledge that the ad relates to prostitution." *Id.* at 20. That *premise* is entirely correct: craigslist does not intend to allow any ad that it knows to be a solicitation of prostitution to appear on its service, and in fact, as its Complaint alleges, craigslist employs a variety of measures aimed at deterring and blocking such ads. But the *conclusion* that the Order draws from that premise—that craigslist lacks standing due to a failure to "allege an intent to engage in [a] course of conduct that is threatened with prosecution," *id.* at 23—is simply wrong.

Under *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979), which the Order cites but misapplies, craigslist clearly has standing to challenge Defendants' so-called "particularized theory of liability."  *Babbitt* found standing to exist in circumstances much like these under a two-part test requiring only (1) that that the plaintiff intends to engage in conduct that is at least "arguably affected" with an interest protected under federal law and (2) that the plaintiff faces a non-speculative threat of prosecution arising from that protected activity.  Here, craigslist easily satisfies both prongs.  Its intends to continue to permit third parties to post lawful advertisements in an "adult services" category and to perform advance manual screening of all such ads in an effort to block ads that do not conform with its terms of use (including any that appear to solicit prostitution).  These are activities that are protected under 47 U.S.C. § 230 and the First Amendment and therefore easily meet *Babbitt*'s first prong.  In addition, craigslist faces a non-speculative threat of criminal prosecution if it continues these activities, satisfying *Babbitt*'s second prong.  To take just one example, Defendants could claim that craigslist's manual screening supplies it with particularized "knowledge" about the content of each ad in the adult services category, disagree with the judgment of a manual reviewer that the content of a particular ad did not appear to be a solicitation of prostitution, and on that basis allege that craiglist failed to block an ad that it must have "known" was such a solicitation.  Indeed, Defendant McMaster's official public announcement, even before the ink on the Order was dry, that craigslist is still the subject of an active State criminal investigation based on its editorial policies and screening

choices confirms that craigslist's apprehension of prosecution for its ongoing activities is far from imaginary or speculative.

## ARGUMENT

A motion for reconsideration under Federal Rule of Civil Procedure 59(e) should be granted to correct for a mistake of law. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Here, the Order contains two mistakes of law, each of which independently warrants reconsideration.

**I.    THE ATTORNEY GENERAL'S SUPPOSED DISAVOWAL OF THE "GENERAL THEORY OF LIABILITY" DID NOT NEGATE THE LIVE CASE AND CONTROVERSY THAT EXISTED AT THE OUTSET OF THIS CASE**

The Order concludes that craigslist did in fact face a credible threat of prosecution under the "generalized theory of liability" when it first filed suit—and accordingly had standing at that time—but that this threat no longer exists as a result of the Attorney General's purported change in position during the litigation. *See, e.g.*, Order at 17-19 & n.11 (Attorney General's position "appears to be a complete reversal" such that craigslist "*no longer* faces" a threat (emphasis added)). On this basis, the Order concludes, prosecution under the generalized theory does not now present an actual or threatened injury that supports standing. *Id*. at 18-19.

This holding is erroneous. As an initial matter, the Order incorrectly conflates standing to bring suit with mootness based on a defendant's non-binding statements or conduct after commencement of a suit. As the Order correctly notes, "standing is ordinarily determined at the time of the filing of the complaint." Order at 18 n.11. The Order nevertheless concludes that the same requirements of standing apply throughout

the litigation under the guise of mootness because "[t]he mootness inquiry is, after all, simply 'the doctrine of standing set in a time frame.'" *Id.* at 19 n.11 (quoting *Townes v. Jarvis*, 577 F.3d 543, 546 (4th Cir. 2009)).  As the Supreme Court has explained, however, that comparison of the doctrines of mootness and standing is incomplete and potentially misleading, especially as applied to conduct that occurs after litigation has commenced.  *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 189-91 (2000) ("[T]he description of mootness as 'standing set in a time frame' is not comprehensive.").[1]

In particular, a defendant claiming that his voluntary cessation or disavowal of challenged conduct "moots a case bears the *formidable burden* of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190 (emphasis added) (citation omitted).  By contrast, in the case of standing, the *plaintiff* bears the burden of showing that the alleged wrongful behavior will likely occur or continue.  *See id.*  As a result, "there are circumstances in

---

[1]    The Fourth Circuit's recent recitation of the "standing set in a time frame" formulation in *Townes* was not in tension with the Supreme Court's analysis and holding in *Laidlaw*.  Unlike *Laidlaw*, and unlike the situation here, *Townes* did not involve any disavowal or cessation of the defendants' alleged unlawful conduct after litigation commenced.  The plaintiff in *Townes* was a prisoner who had sued to challenge a determination that he was ineligible for parole, and at issue was whether the case became moot due solely to the plaintiff's permanent release from prison.

    *Winness v. Yocom*, 433 F.3d 727 (10th Cir. 2006), a standing case on which the Order relies, is also inapposite.  In that case, unlike *Laidlaw* and the present case, there was no "reversal" of the defendant's position after litigation had commenced.  Instead, the Tenth Circuit held that the plaintiff lacked standing to sue, even though he had openly engaged in conduct that arguably violated the state criminal statute he sought to challenge, because he had *never* been cited, prosecuted, or even threatened with citation or prosecution under that statute.  *Id.* at 732.  The state prosecutors' post-complaint affidavits disavowing any intent to prosecute merely reinforced the court's conclusion that the plaintiff had *never* faced a real threat of prosecution and thus lacked standing from outset.  *Id.* at 732-733.

5

which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.*

The Supreme Court's discussion in *Laidlaw* demonstrates that (1) the effect of a defendant's cessation or change in activity after litigation commences should be judged through the prism of mootness, and (2) the test for mootness is "stringent" and places a "heavy burden" of persuasion on the defendant. *Id.* at 189. Indeed, a "defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Id.* at 174. Here, Defendant McMaster's supposed "reversal" of his repeated threats to prosecute craigslist under the "generalized theory of liability" falls well short of mooting this controversy under the controlling *Laidlaw* test for at least three reasons.

*First*, nothing Defendants' counsel have said during this litigation regarding their clients' shifting prosecution theories remotely restricts or binds what Defendants might do in the future regarding threatening to prosecute or actually prosecuting craigslist. The statements of Defendants' counsel that the Order construes as a "reversal" represent, at most, merely characterizations of Defendants' present intentions regarding theories for prosecuting. Nothing in those statements remotely approaches a binding promise that none of the Defendants will ever revert back to the "generalized" theory that Mr. McMaster publicly broadcast in written ultimatums and on network TV during the weeks before craigslist sought relief in this Court. As a result, those statements do not even begin to suggest, much less make it "absolutely clear," that "the allegedly unlawful behavior" of issuing such generalized threats "could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190. Indeed, if these sorts of statements by counsel during

litigation were enough to establish mootness, then defendants in virtually every case seeking declaratory or injunctive relief could easily stave off judicial review just by claiming a change of heart, and then be free to revert to their old ways following dismissal.

Not surprisingly, even in cases where defendants have taken much more formal and substantive steps to cease and renounce their pre-suit course of conduct, the Supreme Court and courts of appeal have repeatedly rejected claims of mootness based on the possibility that the defendants could later reverse course yet again.  *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-289 (1982) (city's repeal of challenged ordinance provision while case was on appeal did not moot controversy because city was not precluded from reenacting precisely the same provision); *Nat'l Advertising Co. v. City of Ft. Lauderdale*, 934 F.2d 283, 286 (11th Cir. 1991) (city's amendments to code did not render case moot because it was uncertain whether city would return code to original form if it managed to avoid court review); *see also Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342-343 (6th Cir. 2007) (burden of showing mootness is greater when the voluntary cessation occurs in response to litigation because there is a greater likelihood that the conduct could be resumed), *cert. denied*, 552 U.S. 1096 (2008); *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003) ("The Attorney General's withdrawal [of Notice of Intended Action] does not make it absolutely clear that the enforcement action is not reasonably likely to recur.").

*Second*, even if it were ever possible for a lawyers' in-court statements about his clients supposedly changed intentions to render a case moot, the statements of

7

Defendants' counsel in this case were at best ambiguous, and for that reason as well fall far short of making it "absolutely clear" that Defendants will not make another u-turn and seek to prosecute craigslist under the generalized theory of liability. Each court filing or hearing transcript that the Order identifies as reflecting Defendants' supposed abandonment of the generalized theory *also* contains statements by counsel adhering to that theory. The Order points to the suggestion in Defendants' reply brief that "the State would have to show Plaintiff knew a particular advertisement was related to prostitution, and either continued to run it, or allowed the same individual to post similar advertisements." Order at 16 (quoting Defs.' Reply to Pl.'s Mem. in Opp. to Mot. to Dismiss (Docket No. 26) ("Defs.' Reply Br.") at 13-14). Yet, in the very same brief, Defendants' counsel simultaneously argued that craigslist could be held responsible for "provid[ing] an inviting beacon for such advertisements," and thus has "a heightened responsibility . . . to police it." *See* Defs.' Reply Br. (Docket No. 26) at 9-10; *see also id.* at 15 (requiring "serious efforts . . . to eliminate advertisements [craigslist] concedes are illegal").

The Order also heavily relies on statements by Defendants' counsel during the motion to dismiss hearing that Defendants "would have to show [craigslist] knew a specific ad was related to prostitution and they allowed it to be posted anyway." Order at 17 (quoting Hr'g Tr. (Docket No. 37) at 14:17-15:1). Yet during the very same hearing, Defendants' counsel also argued that craigslist has a responsibility to actively identify and block or take down prostitution ads to comply with Mr. McMaster's demands. *See* Hr'g Tr. (Docket No. 37) at 19:20-20:11. Filings and statements that are internally

contradictory do not remotely satisfy the "stringent" burden of showing that it is "absolutely clear" that craigslist will not be prosecuted simply for operating a website on which third parties, in violation of craigslist's terms of use and despite craigslist's screening efforts, post ads which one or more of the Defendants may deem "relate" to prostitution, as Defendant McMaster originally threatened. *See, e.g.*, *R. C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 106-107 (2d Cir. 1989) ("When abandonment of challenged conduct seems timed to head off an adverse determination on the merits— particularly when supported by narrowly drawn affidavits containing disclaimers only of present intention to resume allegedly unlawful activity—it cannot be said that the possibility of repetition of such activity is merely abstractly conceivable.").

     *Third*, whether Defendants have really abandoned (even temporarily) a "generalized theory of prosecution" depends on their unstated views about the type and level of "knowledge" that they would deem to be sufficient for a criminal prosecution of craigslist. Given craigslist's ongoing practice of advance manual review of all ads appearing in the adult services section, it is far from "absolutely clear" that Mr. McMaster or the other Defendants (or their successors) will not attempt to charge craigslist with some level of "knowledge" of the content of every ad in that section, thereby reanimating the generalized theory of liability they have supposedly buried. Moreover, the only type of knowledge that Defendants' counsel have thus far referenced—in either their reply brief *or* at the motion hearing—is the knowledge that a particular post was "*related* to prostitution." Order at 16, 17 (quoting both) (emphasis added). This vague and open-ended standard would seem to allow for prosecution well

beyond particularized, actual knowledge that a specific ad in fact constituted an unlawful solicitation of prostitution.

In sum, given that the Defendants proclaimed a willingness to prosecute craigslist based on a "generalized theory of liability" as recently as their opening brief, *see* Defs. Mem. in Support of Mot. to Dismiss (Docket No. 14-2) at 22, and that their supposed subsequent change in position is non-binding, ambiguous and potentially illusory, Defendants have fallen far short of meeting the "formidable burden" for demonstrating mootness set forth in *Laidlaw*.

Finally, even if (contrary to the foregoing) this question were properly analyzed as a matter of standing rather than mootness, binding Fourth Circuit precedent makes clear that a litigation position disavowing an intent to prosecute is insufficient to defeat standing. For example, in *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999), the Court of Appeals held that "the State's litigation position" averring that it would not enforce the challenged provision failed to defeat the plaintiff's standing because a litigation position amounted to "nothing more than [a] promise that NCRL's officers will face no criminal penalties." *Id*. at 711. As the Fourth Circuit explained, if such a promise were sufficient to defeat standing, "NCRL's First Amendment rights would exist only at the sufferance of the State Board of Elections," and NCRL would have "no guarantee that the Board might not tomorrow" change its view. *Id.* at 710-711. Thus, even under a standing analysis, the Fourth Circuit has already decided that a "State's litigation position"—even one *promising* non-enforcement—"fails to alter [the] analysis." *Id.* at 710. Indeed, the Fourth Circuit's precedents go even further. In

*Virginia Society for Human Life, Inc. v. Federal Election Commission*, 263 F.3d 379 (4th Cir. 2001), the plaintiff challenged a regulation that the defendant commission had actually voted to abstain from enforcing in the plaintiff's geographic area. *Id.* at 388. Even in that situation, the Fourth Circuit held the plaintiff had standing to challenge the regulation because "[t]he Commissioners who adopted the policy might be replaced with ones who disagree with it, or some of the Commissioners who voted might change their minds." *Id.*

Thus, the alleged change in the Defendant's position concerning whether they would prosecute under a "generalized theory of liability" could not even defeat standing (if that were the point at issue). It therefore certainly does not satisfy the more stringent standard for rendering a case moot after litigation has commenced. The August 6 Order's contrary conclusion is a reversible mistake of law.

## II.    CRAIGSLIST'S INTENT TO CONTINUE TO DISALLOW ANY ADS IT RECOGNIZES AS SOLICITATIONS OF PROSTITUTION DOES NOT DEPRIVE IT OF STANDING TO SEEK RELIEF WITH RESPECT TO THE "PARTICULARIZED THEORY" OF PROSECUTION

Even if the Defendants had satisfied their "heavy burden" of making it "absolutely clear" that their threat of prosecution on the generalized theory cannot "reasonably be expected to recur," *Laidlaw*, 528 U.S. at 189, a live case or controversy nevertheless remains at least with respect to Defendants' so-called "particularized theory of liability"—which, as this Court has recognized, Defendants are actively and explicitly threatening to pursue, *see* Order at 17, 19.

In order to demonstrate a live case or controversy, craigslist need only show that it intends to continue "to engage in a course of conduct *arguably affected* with a

11

constitutional [or federal statutory] interest" for which it has a "fear of criminal prosecution" that is "not imaginary or wholly speculative."[2]  *Babbitt*, 442 U.S. at 298, 302 (emphasis added); *NCRL*, 168 F.3d at 711 (relevant question is whether plaintiff is "suffer[ing] from the reasonable fear that it can and will be prosecuted").  Here, craigslist easily satisfies this test.  Although craigslist *does not intend* to permit a posting it knows to be a solicitation of prostitution to appear on its site, *it does intend* to continue to maintain a section on its site where third parties may post advertisements for lawful adult services and to engage in advance manual review of all ads appearing in that section in an effort to block any ads that appear on their face to violate craigslist's terms of use, including by soliciting prostitution.  Both the maintenance of that category and the performance of such review are lawful expressive activities that are protected under both Section 230 and the First Amendment, and therefore are (at the very least) "arguably affected" with federal constitutional and statutory interests.  *See* 47 U.S.C. §§ 230(c)(1)-(2), (e)(3).

Moreover, craigslist has "a realistic danger of sustaining a direct injury" from State prosecution on account of its engaging in these protected activities.  *Babbitt*, 442 U.S. at 298.  Indeed, just hours after the August 6 Order was docketed, Defendant McMaster issued a public statement on the Attorney General's official website declaring that the State is actively investigating craigslist right now, presumably—though as noted

---

[2]    The Order is thus incorrect in stating that craigslist must "allege an intent to engage in conduct that would fall within the scope" of the specific theory of threatened prosecution.  Order at 19.  Rather, craigslist need only show that it (1) intends to engage in an arguably protected activity and (2) faces a non-imaginary threat of prosecution for that activity.  *Babbitt*, 442 U.S. at 298.  Put another way, craigslist does not need to demonstrate that it intends to violate the law as interpreted by the Defendants in order to have standing.  As discussed below, craigslist easily satisfies the actual applicable standard.

above, not definitively—under the so-called particularized theory of liability.  *See* Press Release, http://www.scattorneygeneral.org/newsroom/pdf/2010/Release862010C.pdf (attached to proposed First Am. Complaint as Exhibit N) (stating that an investigation "into whether Craigslist *is* knowingly aiding and abetting prostitution on its South Carolina web site *continues*" (emphasis added)).

The fact that there is an active, ongoing criminal investigation into conduct in which craigslist is presently engaged conclusively demonstrates that craigslist faces a risk of prosecution that is more than mere speculation.  craigslist personnel are currently performing advance manual review of third-party ads designated for the adult services section in order to block those that reviewers conclude based only on their content appear to be unlawful solicitations of prostitution.  But Defendants could disagree with a reviewer's judgment calls as to whether a particular ad solicits prostitution (or "relate" to prostitution), and then allege that the very process of manual review gave craigslist sufficient "knowledge" to support prosecution under a "particularized theory."  Or a manual reviewer acting in good faith could inadvertently fail to block an ad that contains some content that could be viewed as a solicitation for prostitution, and again Defendants could assert that the voluntary act of manual review provided craigslist with "knowledge."

The situation here exactly parallels that in *Babbitt*, where the Supreme Court found standing based on a threat of prosecution.  In that case, a state statute made it an unfair labor practice to dissuade a purchaser from buying (*i.e.*, "boycott") an agricultural product through "dishonest, untruthful, and deceptive publicity."  *Babbitt*, 442 U.S. at

301.  The plaintiffs alleged "an intention to continue to engage in boycott activities," but had "no[] plan to propagate untruths."  *Id*.  The Supreme Court held that the plaintiffs had all the intent required to create standing, because even though they did not "plan to propagate untruths," erroneous statements could easily occur in the course of the plaintiffs' contemplated boycott activities.  *Id*.  That possibility of *unintended* expressions of falsehoods gave the plaintiffs "some reason in fearing prosecution for violation of the ban," and was sufficient to create standing.  *Id*. at 302.

Likewise here, though craigslist abhors and prohibits ads that solicit prostitution, and therefore of course *does not plan* to allow ads that it knows contain solicitations of prostitution to appear on its service, it *does plan* to continue to allow third parties to post ads for lawful adult services and to engage in advance manual review of those ads. Because a difference in judgment concerning whether a particular ad constitutes unlawful solicitation or an inadvertent error could occur in the course of these protected activities, craigslist has at least "some reason" to fear prosecution.  *Id*.  Especially in light of Defendant McMaster's many public threats, that risk is hardly "imaginary or speculative."  *Id*.  Indeed, in light of the ongoing "credible threat of prosecution" based on a particularized knowledge theory, Order at 19, craigslist could reasonably conclude that its risk of being subject to an unlawful prosecution is sufficiently high, and the harms that such a prosecution would inflict on it are sufficiently great, that it would be prudent for craigslist to simply cease various protected activities that it presently pursues even though it wants to continue to pursue them.  For example, craigslist may have to discontinue manual review altogether on the South Carolina-directed portions of its

14

website so as to preempt any later argument by Defendants that such review, which

craigslist conducts as a voluntary "Good Samaritan" measure, 47 U.S.C. § 230(c), gave

rise to actual or imputed knowledge about the content of a particular ad that Defendants

may allege was unlawful on its face.  Alternatively, craigslist may have to advise its

manual reviewers to block ads much more aggressively than craigslist believes is

appropriate, effectively censoring a swath of perfectly lawful third-party speech that

craigslist would prefer not to block.  Indeed, absent protection from this Court,

Defendants threats of prosecution based on a particularized theory of liability may well

drive craigslist to consider a complete shuttering of its South Carolina-directed

operations.  Yet all of these activities are protected under Section 230, as well as the First

Amendment.[3]

Significantly, denying craigslist a ruling on the merits of its claims, and requiring

it to do business under the cloud of Defendant McMaster's continuing threats of criminal

prosecution, would subject craigslist to the very sorts of injuries that Section 230 was

intended to prevent.  As the Fourth Circuit observed in its seminal Section 230 decision,

*Zeran v. America Online, Inc,* 129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937

---

[3]      Because craigslist commenced this action when Defendant McMaster was publicly
threatening to prosecute craigslist based on the so-called "generalized theory of liability," its
Complaint of course did not anticipate, or allege particular facts specifically to establish
craigslist's standing to challenge, any so-called "particularized theory of liability," which
Defendants first surfaced in a reply brief filed some four months later.  *See* Defs.' Reply Br.
(Docket No. 26) at 13-14.  Moreover, because Defendants *never* even acknowledged a shift in
their threatened prosecution theory (*see* August 6 Order at 18), much less argued that any such
shift had impaired craigslist's standing, there was no occasion before this Court's standing ruling
for craigslist to consider amending its Complaint to add allegations specifically enumerating the
harmful impacts of threats of prosecution under the so-called particularized theory of liability.
While craigslist believes an amended complaint should not be necessary at this point to establish
its standing or to overcome any suggestion of mootness, out of an abundance of caution and for
the sake of making a complete record, craigslist is simultaneously filing, pursuant to Fed. R. Civ.
P. 15, a motion for leave to file an amended and supplemented complaint adding such allegations.

(1998), Congress's core objectives in broadly immunizing providers of interactive computer services from liability for third-party content were (1) to shield service providers from burdens of litigation that could otherwise be "impossible" to bear in light of the "sheer number of postings on interactive computer services" and (2) to provide such providers with breathing space to voluntarily self-police third-party content without having to fear that such self-policing would itself turn out to be a basis for liability. *Id*. at 333. Informed by these twin objectives, the Fourth Circuit categorically rejected the main pillar of Defendants' "particularized theory of liability," namely, the proposition that Section 230(c)(1) immunity vanishes if the service provider has knowledge of particular unlawful third-party content yet fails to block or remove it. *Id*.

In particular, the Fourth Circuit recognized in *Zeran* that requiring service providers to operate under a legal regime that threatens them with liability for unlawful third-party content if they can be shown to have had particularized knowledge of that content will inevitably deter them from exactly the sort of voluntary self-regulation in which craigslist wants to continue to engage in here, yet may feel compelled to curtail absent relief from this Court. As Chief Judge Wilkinson observed:

> notice-based liability would deter service providers from regulating the dissemination of offensive material over their own services. Any efforts by a service provider to investigate and screen material posted on its service would only lead to notice of potentially defamatory material more frequently and thereby create a stronger basis for liability. Instead of subjecting themselves to further possible lawsuit, service providers would likely eschew attempts at self regulation.

*Id*. For these and related reasons, absent relief from this Court, Defendants' threat of prosecution of craigslist based on the so-called particularized theory of liability—a threat

that this Court has explicitly found to be "credible" to craigslist, Order at 19—would

inflict on craigslist precisely the kinds of injuries that Section 230 was enacted to avoid.[4]

      In these circumstances, there can be no doubt that craigslist satisfies both prongs

of the controlling test for standing set forth in *Babbitt*: craigslist both (1) intends to

continue engaging in conduct—including, for example, hosting a site for lawful third-

party content that includes an adult services category, and voluntarily performing manual

advance screening within that category to block postings that violate its terms of

use—that is at least "arguably affected" with an interest protected under federal law and

(2) faces a non-speculative threat of prosecution, even under a particularized theory of

liability, based on that protected activity.

      The fact that the protected conduct affected by Defendants' threats is expressive

in nature further bolsters the conclusion that craigslist has standing and that this case

presents a concrete case or controversy. As *Babbitt, NCRL, and Virginia Society* all

demonstrate, and as the federal courts have long acknowledged, a credible threat of

---

[4]     Because the consent injunction that this Court entered at the outset of this case specified that it would remain in effect "[u]ntil the Court rules on the merits of craigslist's claims" (Consent Order (Docket No. 8) at 2), because the August 6 Order was not a ruling "on the merits," and because craigslist has now filed both this timely motion for reconsideration and a separate motion for leave to amend its complaint (*see supra* at note 3), craigslist respectfully submits that the consent injunction is presently in force and continues to prohibit "Defendants and their attorneys and staffs . . . from initiating or pursuing any prosecution against craigslist or its officers and employees in relation to content posted by third parties on craigslist's website. Consent Order (Docket No. 8) at 2. For this reason, craigslist believes it presently has interim injunctive relief from Defendants' continuing "credible threat" of criminal prosecution, and therefore is not presently in the crucible of having immediately to choose between the Scylla and Charybdis of either halting its protected expressive activities or subjecting itself and its management to heightened risks of unlawful criminal prosecution. *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974). If any significant question were to arise regarding the continuing force of the Consent Order, craigslist would promptly seek further interim from this Court to confirm, extend or replace the important protections that the Consent Order has afforded to craigslist pending final resolution of this case.

prosecution in a free expression context provides standing even if the plaintiff intends to comply with the law because the threat chills protected conduct. *See, e.g.*, *Babbitt*, 442 U.S. at 301; *NCRL*, 168 F.3d at 710; *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (injury exists when a "plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences") (internal quotation marks omitted). Indeed, as the Supreme Court has made clear, the Declaratory Judgment Act exists precisely to avoid these kinds of choices. In its words, "putting the challenger to the choice between abandoning his rights or risking prosecution [] is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967)).

Here, a declaration on the dispositive question of law that the parties most hotly dispute—whether Section 230 forbids Defendants from prosecuting craigslist based on the content of third party postings which Defendants contend solicit prostitution, even if Defendants allege that craigslist had particularized actual knowledge of the nature and purpose of the posting—will resolve the dilemma by empowering craigslist to fashion and employ its posting and review procedures free from the reasonable apprehension of prosecution, just as Congress intended. In the absence of such a declaration, craigslist would be forced to consider "abandoning [its] rights" to allow its users to post advertisements for lawful conduct, to engage in manual review or, perhaps, to operate its service in South Carolina at all. In all respects, this is a classic case or controversy that this Court has a responsibility to decide.

## CONCLUSION

For the foregoing reasons, craigslist respectfully requests that the Court vacate its August 6, 2010 order, as well as the August 12 judgment based thereon, exercise its Article III jurisdiction over this case or controversy, and deny the Defendants' motion to dismiss craigslist's complaint for the reasons set forth in Plaintiff's opposition to that motion.[5]

Dated:  August 27, 2010

<div style="margin-left:40%">

Respectfully submitted,

  _/s/ Joseph P. Griffith, Jr._
Joseph P. Griffith, Jr. (Fed. ID No. 2473)
Joe Griffith Law Firm, LLC
Seven State Street
Charleston, S.C.  29401
843.225.5563 (tel)
843.722.6254 (fax)

Eric D. Brandfonbrener
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603
312.324.8400 (tel.)
312.324.9400 (fax)

Patrick J. Carome
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC  20006
202.663.6000 (tel)
202.663.6363 (fax)

_Attorneys for Plaintiff craigslist, Inc._

</div>

---

[5]     Pursuant to Local Rule 7.02, counsel for craigslist certify that they conferred in good faith with counsel for Defendants and they indicated that they will oppose this motion.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 27, 2010, I caused the foregoing to be

electronically filed with the Clerk of the Court using CM/ECF which will send electronic

notification of such filing to the following registered participant:

> James Emory Smith, Jr.
> Assistant Deputy Attorney General
> agesmith@ag.state.sc.us
> SC Attorney General's Office
> P.O. Box 11549
> Columbia, SC  29211

Additionally, I hereby certify that true and correct copies of the foregoing were

caused to be served on August 27, 2010 upon the following individuals by e-mail:

> Robert D. Cook
> Assistant Deputy Attorney General
> agrcook@scag.gov
>
> Deborah R. J. Shupe
> Assistant Attorney General
> dshupe@scag.gov

> _/s/ Joseph P. Griffith, Jr._
> Joseph P. Griffith, Jr.